No. 25-2127

# In the
# United States Court of Appeals
## for the Seventh Circuit

RASHAAN CARTER,
*Plaintiff/Appellee*

v.

SP PLUS CORPORATION,
*Defendant/Appellant.*

Appeal from an Order of The United States District Court
for the Northern District of Illinois, Case No. 25-cv-312

## APPELLEE'S BRIEF AND SUPPLEMENTAL APPENDIX

JAMES B. ZOURAS
STEPHAN ZOURAS, LLC
222 W. Adams Avenue, Suite 2020
Chicago, Illinois 60606
(312) 233-1550

*Counsel for Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2127

Short Caption: Rashaan Carter v. SP Plus Corporation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Rashaan Carter

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Stephan Zouras, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ James B. Zouras    Date: 07/09/25

Attorney's Printed Name: James B. Zouras

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 222 W. Adams Street, Suite 2020

    Chicago, IL 60606

Phone Number: 312-233-1550    Fax Number: 312-233-1560

E-Mail Address: jzouras@stephanzouras.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2127

Short Caption: Rashaan Carter v. SP Plus Corporation

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

| | |
|---|---|
| ☐ | **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** |

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Rashaan Carter

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Stephan Zouras, LLC

(3)     If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ David J. Cohen          Date: 07/10/25

Attorney's Printed Name:  David J. Cohen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐   **No** ☑

Address:  222 W. Adams St., Ste. 2020

 Chicago, IL 60606

Phone Number: (215) 873-4836          Fax Number:

E-Mail Address: dcohen@stephanzouras.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

I.    ISSUE PRESENTED ................................................................ 1

II.   STATEMENT OF THE CASE ..................................................... 1

    A.    Procedural History / Material Facts ................................ 1

III.  STANDARD OF REVIEW .......................................................... 9

IV.   SUMMARY OF ARGUMENT ..................................................... 10

V.    ARGUMENT ........................................................................ 12

    A.    The District Court properly treated Plaintiff's Status Motion as a Reconsideration Motion and ultimately allowed reconsideration of its original Minute Entry ........................... 12

    B.    Defendant's procedural unfairness claims are unfounded and misleading ........................................................................ 155

    C.    The District Court did not commit reversible error by refusing to compel Plaintiff into arbitration, because the record evidence does not show Defendant's arbitration agreement is enforceable ......................................................................... 188

        1.    Defendant's evidence ................................................ 199

        2.    Plaintiff's evidence .................................................. 255

    D.    The evidence does not demonstrate a *bona fide* dispute regarding the formation of a binding arbitration agreement ... 28

VI.   CONCLUSION ...................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. Credit One Bank, N.A.*,
  885 F.3d 1054 (7th Cir. 2018) ....................................................... 18, 24

*Chavez-Deremer v. Miller*,
  2025 WL 2785149 (7th Cir. Sept. 30, 2025) ............................................. 4

*Christensen v. Weiss*,
  145 F.4th 743 (7th Cir. 2025) ................................................................. 17

*Cooper v. Macy's Retail Holdings, LLC*,
  2020 WL 7059251 (S.D. Ill. Dec. 2, 2020) ...................................... 19, 25

*Domer v. Menard, Inc.*,
  116 F.4th 686 (7th Cir. 2024) ................................................................. 18

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ......................................................... 19, 25

*Indiana Prot. & Advocacy Services Comm'n v. Indiana Family & Soc.
  Services Admin.*,
  149 F.4th 917 (7th Cir. 2025) ................................................................. 25

*Jaburek v. Foxx,*
  813 F.3d 626 (7th Cir. 2016)..................................................................... 9

*Janssen v. Reschke*,
  2020 WL 6044284 (N.D. Ill. Oct. 13, 2020) ......................................... 13

*Mayle v. Chicago Park Dist.*,
  2019 WL 10817215 (N.D. Ill. Sept. 9, 2019) ........................................ 15

*Randolph v. Dillard's, Inc.*,
  2025 WL 975579 (N.D. Ill. Apr. 1, 2025)........................................ 18, 24

*Ruiz-Cortez v. Lewellen*,
  2017 WL 11632187 (N.D. Ill. Dec. 7, 2017)........................................... 15

*Stachewicz v. Certegy Payment Solutions, LLC*,
  2025 WL 3000206 (C.D. Ill. Oct. 24, 2025) .......................................... 25

*Stone v. Signode Indus. Group, LLC*,
  2025 WL 2646466 (N.D. Ill. Sept. 12, 2025) ........................................ 12

*Tatum v. Williams,*
  2025 WL 1444418 (7th Cir. May 20, 2025) ..........................................17

*TowerNorth Dev., LLC v. City of Geneva, Illinois,*
  2025 WL 2767029 (N.D. Ill. Sept. 29, 2025) .......................................13

*U.S. v. Bush,*
  820 F.2d 858 (7th Cir. 1987)..............................................................17

*United Central Bank v. KMWC 845, LLC,*
  800 F.3d 307 (7th Cir. 2015)................................................................9

**Rules**

N.D. Ill. L.C.R. 47.1(b).......................................................................15

N.D. Ill. L.C.R. 5.3.............................................................................15

## I.    ISSUE PRESENTED

Whether the District Court correctly allowed Plaintiff to pursue reconsideration of its Minute Entry granting Defendant's Arbitration Motion and, thereafter, correctly granted reconsideration because the accumulated evidence did not demonstrate the Parties had formed a valid agreement to arbitrate.

## II.    STATEMENT OF THE CASE

### A.    Procedural History / Material Facts

On January 10, 2025, Plaintiff filed a Collective and Class Action Complaint in the District Court.    Complaint [Dkt. 1].[1]    Plaintiff's Complaint pled violations of the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act of 1968 based on allegations Defendant knowingly and systematically failed to pay its Valet Parkers and Valet Managers all wages owed for the extensive overtime work they routinely performed.    Complaint at ¶¶ 1, 7-11 [Dkt. 1].    Plaintiff's Complaint did not plead any facts relating to an arbitration agreement or class action waiver.    *Id*.

---

[1] Citations to "[Dkt._]" refer to the Parties' District Court filings. Citations to "[Doc._]" refer to the Parties' Seventh Circuit filings. Citations to "(SA._)" refer to Plaintiff's Supplemental Appendix.

1

On February 6, 2025, defense counsel called Plaintiff's counsel claiming Plaintiff had signed an arbitration agreement that prevented the litigation of his claims and, thereafter, shared a copy of the claimed agreement. Arbitration Agreement [Dkt. 7-1]; Status Memo, p. 1 [Dkt. 10-1]. Plaintiff's counsel promptly sent Plaintiff the claimed arbitration agreement and asked him about it. Status Memo at p. 1 [Dkt. 10-1]. During this discussion, Plaintiff provided detailed information about Defendant's onboarding process, including his discussions with the hiring manager, the forms he was shown and completed, and the videos he watched. *Id.* Plaintiff expressly denied he was ever told about, saw, or signed the claimed arbitration agreement. *Id.* Moreover, Plaintiff said that, when asked for an electronic signature, his routine practice is to sign his full name, never just his initials, and never one upper-case initial and one lower-case initial as shown in the claimed agreement. *Id.* at pp. 1-2; Arbitration Agreement at p. 3 ("Employee's Initials Rc") [Dkt. 7-1].

On February 10, 2025, Plaintiff's counsel called defense counsel to share this information and request Plaintiff's complete onboarding paperwork. Status Memo at p. 2 [Dkt. 10-1]. On this call, the Parties agreed to explore the uniformity and scope of Defendant's arbitration

2

program by determining if it could produce signed agreements for a few more employees Plaintiff would identify. *Id.*

On February 13, 2025, Plaintiff's counsel sent defense counsel the names of three more employees (Ebony Carter, Alycia Oliver, and Jabril Marrow) who had agreed to participate in the exploration of Defendant's arbitration program. *Id.*

The next day, without having shared any documents or information about its arbitration program, Defendant moved to compel arbitration. Arbitration Memo [Dkt. 7].   Defendant's filing claimed: Plaintiff had "entered into a binding and enforceable Mutual Agreement to Arbitrate All Claims;" and its agreement bore "Plaintiff's electronic signature" which "evidences clear acceptance of all terms contained therein." Arbitration Memo at pp. 1, 4-5 [Dkt. 7].   Defendant's filing attached Plaintiff's claimed arbitration agreement and a Declaration from Deanna Howell, an employee with responsibilities for Defendant's pre-hire onboarding activities, including the arbitration program.   Arbitration Agreement [Dkt. 7-1]; Howell Dec., ¶¶ 2, 5-10 [Dkt. 7-2].   Defendant's filing did not mention the Parties' conferrals, Plaintiff's challenge to the claimed arbitration agreement, the Parties' agreement to explore the

3

uniformity and scope of Defendant's arbitration program, or Plaintiff's identification of three other employees willing to participate in this effort. Arbitration Memo at pp. 1-6 [Dkt. 7].

Importantly, Defendant did not follow the District Court's published procedures in moving to compel arbitration.[2] Specifically, Defendant did not: notify the District Court's Courtroom Deputy of its Motion; receive instructions from the District Court's Courtroom Deputy on how to proceed; advise the Court its Motion was opposed or unopposed; notice its Motion on the District Court's civil motion call; receive a briefing schedule for the Motion; notify Plaintiff's counsel of the motion date or motion briefing schedule; or notify Plaintiff's counsel the Court would rule by written order and that an appearance on the presentment date was not required. *Compare* Arbitration Memo *with* Judge Bucklo's Procedures (SA1-3); Status Memo at p. 3 (n.1) [Dkt. 10-1]. As a result,

---

[2] This Court may take judicial notice of the District Court's standing orders on motion practice, posted at *https://www.ilnd.uscourts.gov /judge_display.php?LastName=Bucklo*. Supplemental Appendix (SA1-3); *Chavez-Deremer v. Miller*, 2025 WL 2785149, *4 (7th Cir. Sept. 30, 2025) (Fed. R. Evid. 201(b) allows the court to take judicial notice of a fact not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

4

Plaintiff did not believe the District Court had accepted Defendant's Motion, he was expected to file a response, a motion schedule or presentation date had been set, or that the Court was considering the Motion or would issue a ruling.  Status Memo at p. 3 (n.1) [Dkt. 10-1].

On February 27, 2025, Defendant asked Plaintiff to provide signed authorization forms from Ebony Carter, Alycia Oliver, and Jabril Marrow as a condition of producing their claimed arbitration agreements.  *Id.* at p. 3.  By March 7, 2025, Plaintiff delivered signed authorizations from all three people requesting their onboarding paperwork.  *Id.* at pp. 2-3.

On March 11, 2025, before Defendant produced Plaintiff's complete onboarding paperwork or any documents relating to Ebony Carter, Alycia Oliver, or Jabril Marrow, and before the Parties made any progress in their agreed-upon examination of Defendant's arbitration program, the District Court docketed a Minute Entry granting Defendant's Arbitration Motion.  Mar. 11, 2025 Minute Entry [Dkt. 9].

On March 14, 2025, after consulting with chambers, Plaintiff filed a Motion for a status conference to address the Court's ruling in light of the events described above, including Defendant's failure to follow the Court's standing orders in filing its Motion and Plaintiff's claims not to

have known about, seen, or signed Defendant's claimed arbitration agreement. Status Memo at pp. 1-3 [Dkt. 10-1].

On March 19, 2025, the District Court docketed a Minute Entry noting that, because "Plaintiff had not filed any opposition to [Defendant's Arbitration Motion] by the time I had ruled," it would treat "plaintiff's motion for a status conference as a motion to reconsider my order granting defendant's motion to arbitrate," and setting dates for Defendant's opposition, Plaintiff's reply, and its ruling. Mar. 19, 2025 Minute Entry [Dkt. 11].

On April 15, 2025, Defendant filed an Opposition, a Memo, Plaintiff's complete onboarding paperwork, and claimed arbitration agreements with Ebony Carter, Alycia Oliver, and Jabril Marrow. Opposition, pp. 1-3 [Dkt. 12]; Opposition Memo, pp. 4-8 [Dkt. 12]; Plaintiff's onboarding paperwork, pp. 9-44 [Dkt. 12]; Carter, Oliver, and Marrow arbitration agreements, pp. 45-54 [Dkt. 12]. By this time, Defendant clearly knew Plaintiff was challenging both the authenticity and enforceability of its claimed arbitration agreement. Opposition Memo at p. 1 (4 of 54) ("Mr. Carter claims he is *certain* he did not receive, review, or sign the Mutual Agreement to Arbitrate All Claims")

6

(emphasis in original); p. 2 (5 of 54) ("he insists he never received and did not sign the Arbitration Agreement"); p. 3 (6 of 54) ("Plaintiff claims he vividly recalls the onboarding process at SP+, including the forms and videos, and denies ever seeing or signing the Arbitration Agreement") [Doc. 12]. Despite this knowledge, Defendant insisted the Court rule on the enforceability of its claimed arbitration agreement without further discovery, *id.* at p. 2 (5 of 54) ("No amount of discovery will allow Mr. Carter to escape this reality") and – despite having a clear opportunity to do so – failed to provide any new evidence addressing any of Plaintiff's denials, describing Plaintiff's onboarding session, or explaining exactly how Plaintiff's accepted or signed the claimed arbitration agreement. Opposition Memo, pp. 4-8 [Dkt. 12].

On May 1, 2025, Plaintiff filed a Reconsideration Reply supported by his own sworn declaration and two others from Alycia Oliver and Ebony Carter. Reconsideration Reply [Dkt. 14 to 14-3]. Plaintiff challenged Defendant's claimed arbitration agreement in three ways. First, Plaintiff noted Ms. Howell's declaration claimed first-hand knowledge about what Defendant's onboarding process was *supposed to be*, but not about what *actually happened* during his onboarding process,

7

so did not prove his arbitration agreement was enforceable. Reconsideration Reply at pp. 3-4 [Dkt. 14]. Second, Plaintiff noted Defendant had offered no evidence that he (as opposed to someone else) signed his claimed arbitration agreement with Defendant. *Id.* at pp. 5-6. Third, Plaintiff described how, during his onboarding process, he sat across a desk from a manager, answering questions while the manager typed information into forms on a computer screen that Plaintiff could not see and were not explained to him. *Id.* at pp. 7-8.[3] As a result, Plaintiff argued that Defendant had not met its burden to prove the existence of an enforceable arbitration agreement and, therefore, asked the District Court to vacate its March 11, 2025 ruling. *Id.* at pp. 2, 9.

Importantly, at no point during the six weeks that followed, did Defendant pursue any discovery from Plaintiff, present any rebuttal evidence to the Court, seek leave to file a sur-reply, or do anything else to answer Plaintiff's evidence, present further evidence, or make any additional arguments.

---

[3] Alycia Oliver and Ebony Carter had similar experiences. *Id.* at pp. 8-9; Declarations [Docs. 14-2, 14-3].

On June 13, 2025, the District Court granted reconsideration.  Jun. 13, 2025 Order [Dkt. 17].  The District Court expressly faulted Defendant for failing "to engage with plaintiff's account of his onboarding process, which calls into question [the existence of consent based on] the presence of the initials 'Rc' and a check in the box next to 'Employee Electronic Signature.'"  Jun. 13, 2025 Order at pp. 2-3 [Dkt. 17].[4]  Because Defendant made no affirmative effort to engage with Plaintiff's Reply evidence, and did not otherwise meet its burden to prove "a valid agreement to arbitrate was formed," the District Court properly reversed its earlier ruling.  *Id.*

## III.  STANDARD OF REVIEW

This Court reviews district court reconsideration rulings for an abuse of discretion.  *Jaburek v. Foxx,* 813 F.3d 626, 630 (7th Cir. 2016) ("this court will not upset the district court's ruling absent a showing that no reasonable person could agree with its decision"), *citing United Central Bank v. KMWC* 845, LLC, 800 F.3d 307, 309 (7th Cir. 2015).

---

[4] The District Court noted its original ruling was entered "without the benefit of adversarial briefing" because "Defendant's motion was not noticed for hearing."  *Id.* at p. 1 (n.1).

## IV.  SUMMARY OF ARGUMENT

Defendant paints itself as an aggrieved party, but it is clearly responsible for the issues about which it complains on appeal.  Defendant faults the District Court for allowing reconsideration of its Arbitration Motion, Def. Br., pp. 4, 11-12, 17, 19, 22-24 [Doc. 10], but the District Court allowed this relief, in its sound discretion, to remedy Defendant's failure to follow the proper filing procedures.[5]  Defendant complains the District Court denied it a fair opportunity to answer Plaintiff's evidence, *id*. at pp. 5, 15-16, 18, 23-24, but it was Defendant who declined to address any of Plaintiff's factual challenges against its arbitration agreement in conferrals and filings at any point after February 10, 2025 and, even after receiving Plaintiff's Reconsideration Reply, sat on its hands for six weeks failing to seek leave for a sur-reply to provide its (apparently non-existent) rebuttal evidence.[6]  Defendant even faults the

---

[5] *See* N.D. Ill. L.C.R. 5.3; Judge Bucklo's Standing Orders (SA1-3); Status Memo at p. 3 (n.1) [Dkt. 10-1]; Mar. 19, 2025 Minute Entry [Dkt. 11]; Jun. 13, 2025 Order at p. 1 (n.1) [Dkt. 17].

[6] *See* Status Memo at pp. 1-2 [Dkt. 10-1]; Status Memo at pp. 1-3 [Dkt. 10-1]; Opposition Memo at pp. 1-3 [Doc. 12]; Reconsideration Reply [Dkt. 14 to 14-3]; Jun. 13, 2025 Order at pp. 2-3 (faulting Defendant for failing "to engage with plaintiff's account of his onboarding process, which calls into question [the existence of consent") [Dkt. 17].

District Court for accepting "self-serving" evidence in Plaintiff's declarations, *id.* at pp. 31-32, but the testimony Plaintiff offered merits consideration because it is based on personal knowledge and supported by specific facts – as opposed to Defendant's evidence, offered by a corporate executive with no personal knowledge of Plaintiff's onboarding experience.[7] These arguments are nothing more than flimsy excuses offered to win sympathy for an appeal lacking a solid legal foundation.

The District Court did not abuse its discretion or commit reversible error either by allowing Plaintiff to pursue reconsideration of its Minute Entry granting Defendant's Arbitration Motion or by ultimately granting reconsideration of this ruling, because the accumulated evidence did not demonstrate the Parties had formed a valid agreement to arbitrate. This Court should affirm.

---

[7] *See* Arbitration Memo at pp. 1, 4-5 [Dkt. 7]; Howell Dec. at ¶¶ 2, 5-10 [Dkt. 7-2]; Reconsideration Reply at pp. 3-8 [Dkt. 14]; R. Carter, Alycia Oliver, and E. Carter Declarations [Docs. 14-1, 14-3].

## V.  ARGUMENT

### A.  The District Court properly treated Plaintiff's Status Motion as a Reconsideration Motion and ultimately allowed reconsideration of its original Minute Entry

Citing authority for the reconsideration standard, but not for any proposition challenging the District Court's reconsideration ruling, Defendant argues the District Court abused its discretion by treating Plaintiff's Status Motion as a Reconsideration Motion and ultimately allowing reconsideration of its original ruling.  Def. Br., pp. 18-19, 21-25 [Doc. 10].

Courts in this Circuit properly allow reconsideration to consider newly-discovered evidence or correct manifest errors of law or fact.  *Stone v. Signode Indus. Group, LLC*, 2025 WL 2646466, *1 (N.D. Ill. Sept. 12, 2025).  Consistent with this standard, the District Court allowed reconsideration of its Order granting an arbitration stay in this case both to consider newly-discovered evidence and correct a manifest error of fact, so did not commit a reversable abuse of discretion.

The District Court allowed reconsideration following its receipt of Plaintiff's Status Motion.  Minute Entry [Dkt. 11].  Plaintiff's Motion identified newly-discovered evidence (*i.e.,* not presented in Defendant's

12

Arbitration Motion) including: the Parties' conferrals concerning Defendant's claimed arbitration agreement; Plaintiff's specific challenges to the enforceability of his claimed arbitration agreement; the Parties' agreement to explore the uniformity and scope of Defendant's arbitration program; and Plaintiff's identification of three employees willing to participate in this investigation. *Compare* Arbitration Motion at pp. 1-6 *with* Status Memo at pp. 1-3. This new evidence justified both the District Court's allowance of reconsideration and the reversal of its original ruling. *See, e.g., TowerNorth Dev., LLC v. City of Geneva, Illinois*, 2025 WL 2767029, *3 (N.D. Ill. Sept. 29, 2025) (allowing rehearing to consider additional evidence); *Janssen v. Reschke*, 2020 WL 6044284, *6-7 (N.D. Ill. Oct. 13, 2020) (allowing reconsideration to consider evidence not previously produced).[8]

---

[8] Defendant repeatedly claims it was ambushed by the evidence in Plaintiff's Reply Memo which it incorrectly characterizes as presented for the "first time" on May 1, 2025. Def. Br. at pp. 3-4, 7, 15-16, 18, 23-24, 33 [Doc. 10]. As discussed in Section II, above, Plaintiff's counsel informed defense counsel on February 10, 2025 about Plaintiff's onboarding process, his discussions with the hiring manager, the forms he was shown and completed, his express denial that he was ever told about, saw, or signed the claimed arbitration agreement, and his belief that he did not make the electronic signature in his claimed arbitration agreement because his routine practice is to sign his full name, never just his initials, and never one upper-case initial and one lower-case initial as

The District Court also properly granted reconsideration to correct a manifest error of fact. In granting Defendant's Arbitration stay, the District Court found that Plaintiff had signed, and so entered into, an enforceable arbitration agreement with Defendant. *See* Arbitration Memo at pp. 1, 4-5 [Dkt. 7]. Thereafter, Plaintiff presented evidence and arguments explaining how flaws in Defendant's onboarding process resulted in the creation of a "signed" arbitration agreement without his knowledge or consent. Status memo at pp. 1-3 [Dkt. 10-1]; Reconsideration Reply at pp. 3-9 [Dkt. 14]; R. Carter Dec. at ¶¶8-15, Oliver Dec. at ¶¶4-10, and E. Carter Dec. at ¶¶4-13 [Dkts. 14-1 to 14-3]. As a result, the District Court's original Minute Entry granting Defendant's Arbitration stay was based on an error of fact (*i.e.,* that

---

in Defendant's agreement. Status Memo at pp. 1-2 [Dkt. 10-1]. Thereafter, on March 14, 2025, Plaintiff's Status Motion denied that he ever heard about or saw, and had not signed, Defendant's claimed arbitration agreement. *Id.* at pp. 1-3. Plaintiff made these points with sufficient force that, by April 15, 2025, Defendant knew Plaintiff was challenging the authenticity and enforceability of its claimed arbitration agreement. Opposition Memo at p. 1 ("Mr. Carter…is *certain* he did not receive, review, or sign the Mutual Agreement to Arbitrate All Claims") (emphasis in original); p. 2 ("he insists he never received and did not sign the Arbitration Agreement"); p. 3 ("Plaintiff claims he vividly recalls the onboarding process at SP+, including the forms and videos, and denies ever seeing or signing the Arbitration Agreement") [Dkt. 12].

14

Plaintiff had signed Defendant's arbitration agreement), justifying reconsideration. *See, e.g., Mayle v. Chicago Park Dist.*, 2019 WL 10817215, *1-2 (N.D. Ill. Sept. 9, 2019), *aff'd*, 803 Fed. Appx. 31 (7th Cir. 2020) (granting reconsideration to correct mistaken conclusion plaintiff had alleged a reasonable accommodation claim); *Ruiz-Cortez v. Lewellen*, 2017 WL 11632187, *2 (N.D. Ill. Dec. 7, 2017) (granting reconsideration to correct mistaken conclusion that timing of conviction supported a *Brady* violation).

### B.    Defendant's procedural unfairness claims are unfounded and misleading

Defendant seeks to validate its appeal by claiming two types of procedural unfairness.  Each of these claims is misleading.

First, Defendant claims Plaintiff failed to meet, and the District Court failed to enforce, a 14-day opposition deadline applicable to its Arbitration Motion under Local Rule 47.1(b).  Def. Br., pp. 11-13, 22-24, *citing* N.D. Ill. L.C.R. 47.1(b) [Doc. 10].  This claim flatly ignores a superseding requirement in Local Rule 5.3 that parties in all cases consult and follow their assigned judge's motion procedures.  N.D. Ill. L.C.R. 5.3.  Rule 5.3 required Defendant to present its Arbitration Motion under Judge Bucklo's procedures which involve: notifying the Courtroom

Deputy of the motion; advising whether the motion is opposed or unopposed; noticing the motion on the civil motion call; receiving a briefing schedule for the motion; and notifying Plaintiff's counsel of the motion date and briefing schedule. *Id.*; Judge Bucklo's Procedures (SA1-3). Defendant did not follow any of these steps, so gave Plaintiff no reason to believe: the District Court had accepted Defendant's Arbitration Motion; he was expected to file a response; a briefing schedule or presentation date had been set; the Court was considering the Motion; or would issue a ruling. Status Memo, p. 3 (n.1). Thus, it was Defendant's failure to follow the correct motion procedures that caused Plaintiff not to file an earlier opposition and justified the District Court's allowance of reconsideration briefing. Jun. 13, 2025 Order at p. 1 (n.1) ("Defendant's motion was not noticed for hearing") [Dkt. 17].[9]

---

[9] Defendant's claims that Plaintiff "never…attempted to explain his failure to file any original response" and "never…offer[ed] any reason why he missed the original response deadline" are plainly false. *Compare* Def. Br. at pp. 13, 23 *with* Status Memo at p. 3 (n.1) ("This Order issued despite several variations from the Court's typical motions practice, including that Defendant did not: notify the courtroom deputy of its Motion; notice its Motion on the motion call; or properly notice Plaintiff pursuant to the Court's procedures. As a result, Plaintiff did not know Defendant's Motion was properly calendared or under consideration, that the Court was expecting a response, or would rule on the Motion without one").

16

Second, Defendant claims the District Court unfairly denied it an opportunity to answer the evidence in Plaintiff's Reconsideration Reply. Def. Br. at pp. 5, 16, 18, 24 [Doc. 10].  While the District Court's first Minute Entry did not expressly schedule a sur-reply filing, Minute Entry [Dkt. 11], nothing in that Order (or otherwise) prevented Defendant from seeking leave to file a sur-reply to address Plaintiff's evidence.  Instead of taking any action to avoid the unfairness it now claims, Defendant let six weeks pass without taking discernable steps to pursue any discovery from Plaintiff, present any rebuttal evidence to the Court, seek leave to file a sur-reply, or do anything else to answer Plaintiff's evidence or present further argument.  Thus, the opportunity Defendant claims the District Court improperly failed to provide is more accurately described as an effort Defendant failed to undertake.  This Court often refuses to reward parties' lack of diligence, and should do the same here.  *See e.g., Christensen v. Weiss*, 145 F.4th 743, 754-55 (7th Cir. 2025) (no abuse of discretion in denying motion filed two weeks late); *Tatum v. Williams*, 2025 WL 1444418, *3 (7th Cir. May 20, 2025) ("when a party fails to secure discovery because of his own lack of diligence, the neglect is generally not excusable"); *U.S. v. Bush*, 820 F.2d 858, 861 (7th Cir. 1987)

17

(affirming denial of continuance request where new attorney had six weeks to prepare for trial).

### C. The District Court did not commit reversible error by refusing to compel Plaintiff into arbitration, because the record evidence does not show Defendant's arbitration agreement is enforceable

Defendant urges this Court to engage in a *de novo* review and find reversible error in the District Court's conclusion that Defendant failed to prove it had a valid arbitration agreement with Plaintiff. Def. Br. at pp. 3-5, 19-20, 25-34 [Doc. 10]. The record evidence from the District Court does not prove Plaintiff knew about, saw, read, understood, accepted, or signed Defendant's arbitration agreement, so neither meets the legal criteria for a binding contract nor justifies the forced arbitration of his claims.

A party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. *Randolph v. Dillard's, Inc.*, 2025 WL 975579, *2 (N.D. Ill. Apr. 1, 2025), *citing A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Whether an agreement to arbitrate has been formed is governed by (Illinois) state-law principles of contract formation. *Randolph*, 2025 WL 975579 at *2, *citing Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). Where, as here, an arbitration agreement is

18

presented electronically, the party seeking to compel arbitration must prove three things: the other party had notice of the agreement, accepted the agreement, and received consideration supporting the agreement. *Cooper v. Macy's Retail Holdings, LLC*, 2020 WL 7059251, *1 (S.D. Ill. Dec. 2, 2020), *citing Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712 (7th Cir. 2019). The record evidence does not meet this test, so does not prove the existence of an enforceable arbitration agreement.

### 1.    Defendant's evidence

Defendant's evidence of an arbitration agreement with Plaintiff consists of two things: a declaration from one of its employees, Deanna Howell [Dkt. 7-2], and an onboarding packet it suggests Plaintiff completed, including a "Mutual Agreement to Arbitrate" [Dkts. 7-1, 12].

In her declaration, Ms. Howell claims to "oversee individuals responsible for maintaining pre-hire onboarding policies and documentation for SP+'s employees nationwide," and to be "familiar with the application process and how SP+ completes all associated forms and policies." Howell Dec. at ¶¶2, 5 [Dkt. 7-2].

Ms. Howell's declaration includes two statements about Defendant's typical onboarding practices:

19

> At the time of Mr. Carter's hire on or about February 10, 2023, SP+ provided certain onboarding documents, including the Mutual Agreement to Arbitrate All Claims, to new hires; and
>
> It was… SP+ regular practice to allow new hires time to review the onboarding documents, including the Mutual Agreement to Arbitrate All claims, before signing.

*Id.* at ¶¶7-8. However, these statements only address what Defendant's onboarding process was *supposed to be*, not what Plaintiff actually experienced (*e.g.,* it does not inform whether he was shown documents, what documents he was shown, if he reviewed or signed any documents, etc…). As such, these statements do not prove a binding arbitration agreement *with Plaintiff.*

Ms. Howell's declaration includes a single statement about Plaintiff's onboarding session:

> Mr. Carter accessed reviewed, acknowledged, and electronically signed the Mutual Agreement to Arbitrate All Claims and other onboarding documents that were provided to him by SP+ on February 10, 2023 at 2:53 p.m. EST.

*Id.* at ¶10. This statement contains at least two obvious errors. First, Plaintiff could not have signed, and did not sign, all of Defendant's many onboarding documents at the exact same moment in time (*i.e.,* 2:53 p.m.),

20

and Defendant's business records do not support this conclusion.[10] Second, Ms. Howell does not claim to have been present at, or to have otherwise witnessed, Plaintiff's onboarding. Nor does her Declaration provide any facts explaining how she could know what happened during this session, including: whether Plaintiff was shown the claimed arbitration agreement, how Plaintiff was shown the agreement, that Plaintiff was given an opportunity to (or did) review the agreement, that any aspect of the agreement was explained to Plaintiff, or how it was explained, how long Plaintiff spent reviewing the agreement, that Plaintiff was allowed to (or did) ask any questions about the agreement, whether Plaintiff was told anything about the agreement, or what he was told, how (or if) Plaintiff accepted or signed the agreement. Because Ms. Howell has no personal knowledge of Plaintiff's actual onboarding experience, her testimony cannot prove a binding arbitration agreement to arbitrate Plaintiff's claims – or really anything beyond what she thought Defendant's onboarding practices were supposed to be.

---

[10] *See* Arbitration Memo, Ex. A [Dist. Ct. Doc. 12] (including seven onboarding documents signed between 2:45p.m. and 2:59 p.m., only one of which has a 2:53 p.m. time-stamp, and six additional documents without time stamps said to have been presented and completed in the same session).

21

Defendant's evidence also includes its full onboarding packet, made up of 13 documents. Reconsideration Opp., Exhibit A [Dkt. 12]. The only document in this packet that relates to Defendant's claimed arbitration agreement with Plaintiff is a three-page "Mutual Agreement to Arbitrate." *Id.* at pp. 38-40 of 54 (pagination combined with other documents). This document, which contains arbitration and class waiver provisions, makes three references to Plaintiff:

> "Name of Employee Rashaan Carter" (at the top of p. 1);
>
> "Employee's Initials Rc (*sic*)" (toward the bottom of p. 3); and
>
> "☑ Employee Electronic Signature Rashaan Carter 2/10/2023 2:53 PM (checking the checkbox above is equivalent to a handwritten signature)" (at the bottom of p. 3).

*Id.* (formatting in original).

As already discussed, Defendant has not offered any evidence explaining how or whether Plaintiff ever saw this agreement. Nor did Defendant offer any evidence explaining how any of the three entries above were placed into the agreement, or who placed them there (*e.g.,* Plaintiff or anyone else). Most notably, Defendant offered no evidence discussing, demonstrating, or explaining how or whether Plaintiff clicked

on, or entered a check-mark in, the radio box at the bottom of the third page, or otherwise entered his electronic signature in this document. In short, Defendant has offered no evidence tying its claimed arbitration agreement to Plaintiff other than the fact his name appears in it, although this could have been accomplished any number of ways (by the corporate office, by Human Resources, by an on-site supervisor or manager, or by anyone else with access to this document). This obvious failure of proof means this Court cannot find this claimed agreement represents a binding contract. Nothing in any of Defendants' filings corrects this glaring defect.

Defendant's Arbitration Memo claims the "Arbitration Agreement is a valid and enforceable agreement," pointing to Ms. Howell's Declaration as proof that "Plaintiff was presented with and signed the Arbitration Agreement through his employment onboarding on February 10, 2023." Arbitration Memo at pp. 3-4 [Dkt. 7]. However, as discussed above, Ms. Howell has no factual basis for knowing what documents (if any) Plaintiff was shown, or signed, during his onboarding session. Defendant concludes "Plaintiff's electronic signature evidences clear acceptance of all terms contained therein," *id.*, but, as discussed above,

offered no evidence that Plaintiff ever saw, read, understood, or accepted the arbitration agreement, or signed the document himself.

Defendant's Opposition Memo claims that: "on February 10, 2023, Plaintiff and SP+ entered into a binding Arbitration Agreement, requiring arbitration for all employment-related claims," that "the parties have a valid agreement to arbitrate," and that "Plaintiff signed the Arbitration Agreement during his onboarding process and, in so doing, clearly accepted its terms." Opposition Memo at pp. 2, 4 [Dkt. 12]. Defendant makes all three of these claims in conclusory fashion, without citing *any* evidence – not even Ms. Howell's Declaration or the agreement itself. *Id.* Defendant's aggressively lackadaisical and uninformed bid to prove the existence of a binding agreement that requires the forced arbitration of Plaintiff's claims *without any relevant or material evidence demonstrating a mutual, informed agreement with Plaintiff* does not merit this Court's endorsement. Defendant has plainly failed to meet its burden to establish an enforceable arbitration agreement, *Credit One Bank,* 885 F.3d at 1063; *Randolph,* 2025 WL 975579 at *2, as further demonstrated by Plaintiff's evidence.

24

### 2.    Plaintiff's evidence

Plaintiff directly undercuts two of the required elements (notice and acceptance) for a binding agreement by providing thorough, credible evidence that Defendant's facility manager, Brenjy Etienne, "filled out the paperwork" to begin Plaintiff's employment, including the arbitration agreement.  R. Carter Dec. at ¶¶8-19 [Dkt. 14-1].[11]  *See Cooper*, 2020 WL 7059251 at *1; *Gupta,* 934 F.3d at 712.

Plaintiff worked as a "SP Plus valet parker/supervisor at several hotel and casino locations in and around Philadelphia, PA from February 2023 to August 2024."  R. Carter Dec. at ¶2.  Plaintiff applied online for

---

[11] Defendant suggests the District Court improperly accepted, and this Court should ignore, the "general denials or conclusory assertions" in Plaintiff's "self-serving affidavits."  Def. Br. at pp. 31-32 [Doc. 10]. However, this Circuit's case-law is clear that "district courts may, in their discretion, consider 'self-serving statements in affidavits,' so long as they 'are based on personal knowledge and set forth specific facts.'" *Stachewicz v. Certegy Payment Solutions, LLC*, 2025 WL 3000206, *8 (C.D. Ill. Oct. 24, 2025).  *See Indiana Prot. & Advocacy Services Comm'n v. Indiana Family & Soc. Services Admin.,* 149 F.4th 917, 930 (7th Cir. 2025) ("The federal rules do not prohibit or give lesser weight to self-serving affidavits based on personal knowledge. We have repeatedly emphasized that the term 'self-serving' should not be used to 'denigrate perfectly admissible evidence'").  While the testimony in Plaintiff's Declaration supports his legal positions in this action, it is also based on his personal knowledge and directly supported by specific facts from his meetings and onboarding session with Defendant's facility manager, so merits consideration.

this job, had an in-person interview with Mr. Etienne, then submitted to drug and background checks, and was invited back for another in-person meeting to complete the hiring process and begin training. *Id.* at ¶¶3-7.

During this second in-person meeting, Plaintiff explains that Mr. Etienne:

> set up a new SP Plus account for me on his computer and said he would take care of my paperwork. [He] sat at the computer and I sat across his desk from him as he filled-out the paperwork. I could not see [his] computer screen as he typed.

*Id.* at ¶8. Sitting across his desk from Plaintiff, Mr. Etienne proceeded to ask Plaintiff for information he entered into his computer. Mr. Etienne described, explained, or showed Plaintiff a few of the forms he was completing. *Id.* at ¶¶9, 14, 17 (employee handbook, direct deposit, and IRS W-4 forms). However, for most screens, including the arbitration agreement, Mr. Etienne simply asked Plaintiff for information and typed it into his computer without showing or telling Plaintiff anything. *Id.* at ¶¶11-13, 15-16.

Specifically concerning the arbitration agreement, Plaintiff testified:

26

[Mr. Etienne] did not show me, or tell me anything about, an arbitration form and I did not read or sign one;

At no point did anyone tell me I had to sign an arbitration agreement or class waiver, show me an arbitration agreement or class waiver, explain an arbitration agreement or class waiver to me, tell me to review an arbitration agreement or class waiver, or give me a chance to review an arbitration agreement or class waiver;

I have recently seen a copy of the arbitration agreement [Defendant] claims I signed. It says "Rashaan Carter" at the top. I did not write that. It says "Employee's Initials Rc" at the bottom. I did not write that. I only use capital letters when I enter my initials. There is a check-box at the bottom with an electronic signature. I did not check this box or sign my name. [Mr. Etienne] did not show me or tell me about this form when we did paperwork at his desk; and

I have not knowingly signed or accepted any arbitration agreement or class waiver with SP Plus.

*Id.* at ¶¶12, 23-25. Plaintiff's testimony demonstrates a glaring gap between how Defendant's onboarding process was *supposed to work* and how it *actually worked* and, more importantly, totally undermines Defendant's effort to prove an enforceable arbitration agreement with

27

Plaintiff.[12]

### D. The evidence does not demonstrate a *bona fide* dispute regarding the formation of a binding arbitration agreement

Defendant's final argument is that the District Court erred by failing to proceed directly to trial to resolve the "factual dispute" around the enforceability of Defendant's claimed arbitration agreement. Def. Br. at pp. 34-35 [Doc. 10]. Defendant makes this argument without any factual or legal support, *id.*, and this Court may safely disregard it for the obvious reason that the record evidence does not present a *bona fide* factual dispute about the enforceability of this agreement. Despite

---

[12] Plaintiff's experience was not unique. Alycia Oliver, an SP Plus Cashier and Valet Parker, and Ebony Carter, an SP Plus Valet Parker Supervisor, also wound up with "signed" arbitration agreements in their personnel files despite never seeing or hearing anything about these forms during their onboarding experiences. *Compare* Arbitration Opposition at pp. 46-48 (E. Carter Agmt.) *and* pp. 52-54 (Oliver Agmt.) [Dist. Ct. Doc. 12] *with* E. Carter Dec. at ¶¶3-13 [Dist. Ct. Doc. 14-3] *and* Oliver Dec., ¶¶ 3-10 [Dist. Ct. Doc. 14-2]. SP Plus hired Ms. Oliver and let her start working without any "formal" onboarding process, sending links to her phone to complete an I-9 Form and sign up for direct deposit, and asking her to scan a QR code in the cashier booth to join the SP Plus scheduling system. Oliver Dec. at ¶¶ 3-4, 6, 8. SP Plus hired Ms. Carter without any "formal" onboarding process, scheduling her to start working in two days because her manager "needed a day to get [her] paperwork into the system." E. Carter Dec. at ¶¶3-5, 12. Neither of these employees was told about, or shown, an arbitration agreement, and neither accepted or signed an arbitration agreement. E. Carter Dec. at ¶13; Oliver Dec. at ¶¶9-10.

multiple opportunities, Defendant has offered no first-hand testimony or other evidence proving that Plaintiff knew about, saw, read, understood, accepted, or signed its claimed arbitration agreement, while Plaintiff has offered a detailed, first-hand account (confirmed by two other employees) explaining his lack of knowledge or consent relating to Defendant's arbitration agreement.

## VI.   CONCLUSION

For all the above-stated reasons, this Court should affirm the District Court's June 13, 2025 Reconsideration Order.

Respectfully submitted,

*/s/James B. Zouras*
James B. Zouras
STEPHAN ZOURAS, LLC
222 W. Adams Avenue, Suite 2020
Chicago, IL 60606
(312) 233-1550

David J. Cohen
STEPHAN ZOURAS, LLC
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836

*Counsel for Appellee*

29

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(b) because, excluding the parts of the brief exempted by Rule 32(f), this brief contains 5,872 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2020 in 14-point Century Schoolbook style font.

_/s/James B. Zouras_
James B. Zouras
STEPHAN ZOURAS, LLC
222 W. Adams Avenue, Suite 2020
Chicago, IL 60606
(312) 233-1550

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, the Brief of Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/James B. Zouras*
James B. Zouras
STEPHAN ZOURAS, LLC
222 W. Adams Avenue, Suite 2020
Chicago, IL 60606
(312) 233-1550